UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RAHKIM TUCKER,<br>    *Petitioner*,<br>    *v.*<br>UNITED STATES OF AMERICA,<br>    *Respondent*. | Civil No. 3:15-cv-1557 (JBA)<br><br>December 30, 2015 |

**RULING DENYING PETITIONER'S MOTION UNDER § 2255**

On April 6, 2010, Petitioner Rahkim Tucker pled guilty to possession of a firearm by a convicted felon, for which he was sentenced to 37 months in prison, followed by three years of supervised release. Because Mr. Tucker violated the terms of his supervised release, on September 5, 2012, the Court placed him on electronic monitoring for six months. Mr. Tucker then violated the conditions of his home confinement. As a result, on January 31, 2013, the Court sentenced him to twelve months' imprisonment, followed by two years of supervised release. On February 3, 2014, Mr. Tucker provided a urine sample which tested positive for marijuana, in violation of his conditions of supervised release. Five days later, on February 8, 2014, he was arrested by state authorities for several drug-related crimes, again in violation of the conditions of his release. A revocation hearing was held on October 29, 2014, and on December 10, 2014, this Court sentenced Mr. Tucker to two years, to run concurrently with his state sentence of three years (imposed on December 12, 2014). Mr. Tucker now moves [Doc. # 1] to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. The Court issued an Order to Show Cause on September 16, 2015, to which the Government responded on October 23, 2015.

I.      **Background**

During the October 29, 2014 revocation hearing, Mr. Tucker expressed his desire to remain in state custody, rather than being transferred to a federal facility so that he could complete a gang renunciation program which he had started. (*See* Revocation Hr'g Tr., Ex. 1 to Gov't's Resp. [Doc. # 5] at 10.) He also expressed a preference to remain in state custody so that he could become eligible for parole. (*Id.* at 29.)

The Court explained to him that he would receive credit toward his anticipated three-year state sentence for time served, so that by the time he had served his two-year federal sentence, he would only have a few months left to serve in state custody. (*Id.* at 31.) Assistant United States Attorney Felice Duffy then interjected, leading to the following exchange:

> Ms. Duffy: [M]y understanding is if he was sentenced today and put into federal custody, he would get credit back to January on the federal term.
>
> [Defense Attorney Justin] Smith: Yes, your Honor. That's my understanding. . . .
>
> The Court: If he's sentenced in a month, but before the state imposes its sentence, that's still true and he gets ten months [credit].
>
> Ms. Duffy: Exactly. . . . I believe if he was sentenced by the state in December to three years, he would get the time served already to the state sentence, and if he was sentenced federally after that, that whatever the sentence was, if you were to say it was to run concurrent, it would run concurrently with him serving his state sentence so that he might not – again, this is always up to BOP, too, but he may not go into federal jail at that point. . . .
>
> The Court: So Ms. Duffy is suggesting that if your state sentence proceeds and a federal sentence is imposed after that concurrently, at some point at which the numbers work out you wouldn't have anymore [sic] time

> because you would have served the federal time if it were imposed
> concurrently already in state prison.

(*Id*. at 32–34.) Ultimately, the Court decided to continue sentencing to allow the state to

sentence Mr. Tucker before it imposed the federal sentence and to permit Mr. Tucker to

complete the gang renunciation program. (*Id*. at 35.)

When the parties returned to Court on December 10, 2014 for sentencing,

however, the Court learned that Mr. Tucker's state sentence had not yet been imposed

and Mr. Tucker had been transferred to federal custody. (Sent. Tr., Ex. 2 to Gov't Resp.

at 4.) Mr. Smith urged the Court "to impose a sentence of 18 months as opposed to the

full 24 months" (*id*. at 7), while the Government sought a sentence of 24 months (*id*. at 8).

In imposing a sentence of 24 months, the Court explained:

> I realize that there have been some changes in your state court situation
> such that you now find yourself in federal custody, but the objective of the
> Court at this point is to impose a sentence that reflects the seriousness of a
> third time supervised release violation, promotes respect for the law, is just
> punishment, and provides adequate deterrence to your conduct, because
> that will also enhance the goal of protecting the public from further
> crimes.

(*Id*. at 10.) The Court went on to add:

> [The Court] will impose a sentence of 24 months, the statutory maximum,
> with no supervision to follow. The calculation that I received if this
> sentence were imposed is that your anticipated release date with good time
> would be November 7, 2015, less than a year from now.

(*Id*. at 11.)

## II.      Discussion

Section 2255 allows prisoners in federal custody to move for their sentences to be vacated, set aside, or corrected. 28 U.S.C. § 2255. Section 2255(a) states as the grounds for which relief can be provided: "[T]he sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Mr. Tucker alleges in his § 2255 petition that the Court relied on a material misapprehension of fact in sentencing Mr. Tucker, and as a result, violated his due process rights.[1] (Mot. to Vacate [Doc. # 1] at 5.)

Specifically, Mr. Tucker argues that in sentencing him to two years, the Court was under the incorrect impression that Mr. Tucker would receive credit toward his federal sentence for the time he had spent in custody from his arrest until his sentencing. (*Id.* at 6.) In support of this claim, Mr. Tucker points to the Court's statement, in imposing his sentence that "[t]he calculation that I received if this sentence were imposed is that your anticipated release date with good time would be November 7, 2015, less than a year from now."

The Government concedes that Ms. Duffy's statement during the revocation hearing "that if the defendant were sentenced at the [revocation] proceeding, he would get credit [on his federal sentence] back to the time he had been arrested," was erroneous.

---

[1] The Government acknowledges that Mr. Tucker's use of a § 2255 petition to challenge the sentence imposed by the Court is appropriate. (Gov't's Resp. [Doc. # 5] at 15.)

4

(Gov't's Resp. at 17.) It "further concede[s] that to the extent . . . this Court detrimentally relied on the misstatement in imposing the twenty-four month sentence, resentencing may be warranted." (*Id.*)

Although there was undoubtedly some confusion as to whether Mr. Tucker would receive credit towards his federal or his state sentence, the Court's decision to impose a twenty-four month sentence was not, in any part, based on its belief that Mr. Tucker would receive credit toward his federal sentence. Indeed, in sentencing Mr. Tucker to the maximum statutorily permitted sentence, the Court underscored that its objective was "to impose a sentence that reflects the seriousness of a third time supervised release violation, promotes respect for the law, is just punishment, and provides adequate deterrence to your conduct, because that will also enhance the goal of protecting the public from further crimes." (Sent. Tr. at 10.)

As the Court explained to the parties on the record on October 27, 2015:

[T]he Court had contemplated that a two-year sentence for all those violations of supervised release, under all the circumstances of Mr. Tucker's case, was the appropriate sentence; that when it should be imposed was the real question; that we postponed imposing it so that he would stay in state custody for the period of time he needed to complete his gang renunciation program, so he would never have to go back and start over; and that he would serve his two-year federal sentence, which the state would credit against his three-year sentence; that by the time we . . . imposed the sentence on December 10, 2014, he had . . . logged in nine or ten months on his state sentence. He would then go serve his 24-month sentence, with whatever reductions the BOP would make. And then, if there was any time remaining on his state sentence, he would go back and finish that, but the contemplation was that it would be a very small amount of time, if any. And that way, he got the major thing he wanted, which was to stay in state custody to finish that gang renunciation program, and the record sets out all of the benefits to him in doing that,

5

versus the detriments if he didn't complete it and if he got rearrested and convicted with a new state sentence in the future. . . .

The Court had decided [the federal sentence] would be two years, although Mr. Smith argued for 18 months. . . . The date of November 7 [wa]s simply a projected date at best, and one that all parties seem currently to be mystified by. It is however, not any part of the sentence. And not being part of the sentence, means that however it came to be, [it] was not a part of the assumption that the Court made in imposing the 24-month sentence. Thus, whatever may have been the misstatements as to whether Mr. Tucker would be credited federally with the time from his February 2014 arrest, [they] w[ere] not part of the [Court's] contemplation of the length of his federal sentence . . . . Thus, it does not appear in my view that there's any denial of due process. While I recognize that there is an air of mystery on how this [date] of November 7 came . . . to the Court's attention and was not corrected, it did not play a role in the [Court's] contemplation of the length of the federal sentence for the violation of the term of supervised release.

Because the Court did not rely on a material misrepresentation in imposing Mr. Tucker's sentence, there was no violation of due process, and thus no grounds for Mr. Tucker's § 2255 petition.

## III.    Conclusion

For the foregoing reasons, Rahkim Tucker's Petition [Doc. # 1] to Vacate, Set Aside, or Correct a Sentence is DENIED.  The Clerk is directed to close this case.

The only remaining issue is whether to issue a Certificate of Appealability ("COA"). Under 28 U.S.C. § 2253(c)(2), "a certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* In order to sustain this burden, Petitioner would have to show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or

that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citations omitted).

"Where a district court has rejected [a petitioner's] claim[] on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim[] debatable or wrong." *Id.* Here, the Court does not find that reasonable jurists could disagree on whether Mr. Tucker's claims are "adequate to deserve encouragement to proceed further," *Slack*, 579 U.S. at 484, and therefore declines to issue a COA.

IT IS SO ORDERED.

      /s/
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 30th day of December, 2015.

7